**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

No. 15-3288

FRANK SHARRON PIPER, III,

      Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 2:12-CR-20141-KHV-4)**

Paige A. Nichols, Research & Writing Specialist (Melody Brannon, Federal Public Defender, with her on the briefs), Office of the Federal Public Defender, Topeka, Kansas, appearing for Appellant.

James A. Brown, Assistant United States Attorney (Thomas E. Beall, Acting United States Attorney, with him on the brief), Office of the United States Attorney for the District of Kansas, Topeka, Kansas, appearing for Appellee.

Before **KELLY**, **HARTZ**, and **MATHESON**, Circuit Judges.

**MATHESON**, Circuit Judge.

Federal prisoner Frank Sharron Piper, III, appeals the district court's denial of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we affirm.

## I.  BACKGROUND

### A.  *Conviction and Sentence*

On November 28, 2012, a grand jury indicted Mr. Piper for participating in a cocaine conspiracy in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and for various related offenses.  On January 8, 2014, he pled guilty to the conspiracy charge.  On May 14, 2014, the district court sentenced Mr. Piper to 135 months in prison.  Mr. Piper had been on release from December 6, 2012 until he was sentenced.

### B.  *Motion to Reduce Sentence*

On November 1, 2014, Amendment 782 to the United States Sentencing Guidelines ("U.S.S.G.") came into effect, retroactively lowering the base offense levels for certain drug offenses.  The parties agree that Amendment 782 applies to Mr. Piper's crime of conviction.

### 1.  **Mr. Piper's Motion for a Sentence Reduction**

On September 16, 2015, Mr. Piper moved for a reduced sentence under Amendment 782 and 18 U.S.C. § 3582(c)(2) (authorizing district courts to modify sentences based on retroactive guideline amendments).  His supporting Memorandum of Law included only broad policy-based arguments.  He argued, for example, that long drug sentences overcrowd prisons, limit inmate access to anti-recidivism programs, incapacitate prisoners long after they are likely to threaten public safety, and fail to deter crime.

2. **The Government's Response**

In response, the Government argued that, despite Mr. Piper's eligibility for a reduction under Amendment 782, he should not receive one because, after he pled guilty but before he was sentenced, he created a rap video to intimidate four cooperating witnesses whose statements had appeared in Mr. Piper's Presentence Investigation Report ("PSR").

The prosecution said the video was titled "No Leaks Frank James – State to State,"[1] and that "No Leaks" referred to a rap record label and a group of people whose "CEO" was Mr. Piper. ROA, Vol. I at 113-14. The Government described the video in its response brief to the motion as including:

- Photographs of pages from the PSR and excerpts from the PSR displayed with photographs of the cooperating witnesses.

- The defendant rapping an anti-cooperation message—referencing "conspiracy" as "the hardest charge to beat" and someone who "would try to tell on me," then using his index finger to simulate pulling a trigger.

- A bound and gagged hostage figure in a dark room, who is later shown with his head hanging forward, nearly motionless.

- The defendant referencing those who "told on me" and stating "stop snitchin'."

- A screen caption instructing to send letters and pictures to the defendant's prison address.

*Id.* at 114-15.

---

[1] The Government asserted "Frank James" was Mr. Piper's alias. ROA, Vol. I at 114.

Although the prosecution said the video "was saved onto a compact disc by law enforcement," the Government did not provide the district court with a copy, relied solely on its own description and conclusions, and provided no sworn affidavit or transcript of the video's contents. *Id.* at 114.[2] After describing the video, the Government asserted the co-CEO of No Leaks, Michael Duane Mills, edited the video, uploaded it to YouTube on November 13, 2014, when Mr. Piper was in prison, and removed it from YouTube five days later.

The Government argued these facts demonstrated "a continued need to protect the public from further crimes of [Mr. Piper] and a continued need to afford adequate deterrence." *Id.* at 126. A reduced sentence, it said, was therefore unwarranted under the 18 U.S.C. § 3553(a) factors, which a district court must consider when determining whether to reduce a sentence under § 3582(c)(2).[3]

3. **Mr. Piper's Reply**

Mr. Piper's reply did not contest the Government's description of the video's contents. It instead argued for a reduced sentence because the Government had failed to show "Mr. Piper had anything to do with disseminating the video." *Id.* at 129. It noted

---

[2] Accordingly, neither the district court nor the appellate record contains the video or a sworn statement regarding its contents.

[3] The Government also argued that Mr. Piper's involvement in the video's creation while on release violated the court's terms of release, which required him to "avoid all contact, directly or indirectly with any person who is or may be a victim or witness in the investigation or prosecution . . . ." ROA, Vol. I at 125.

that Mr. Piper "had been in federal custody for months before the video was released."

*Id*.

4. **The District Court's Denial of Mr. Piper's Motion**

The district court denied Mr. Piper's motion for a reduced sentence based on the following uncontested facts:

- "On November 18, 2014, government agents learned that a video titled 'No Leaks Frank James – State to State' had been uploaded to YouTube . . . . [I]t was removed later that day."

- "The video includes still photographs of pages from defendant's presentence investigation report which summarize statements of cooperators. The video displayed these excerpts next to still photographs of the individuals who made the statements."

- "The video also showed defendant and another individual simulating a trigger-pulling motion with their index fingers when the rap lyrics reached '. . . try to tell on me.'"

- Mr. Piper "created [the rap video] while on release in this case and allowed someone else to preserve a copy."

*Id.* at 136.

After reciting in a footnote that "[Mr. Piper did] not suggest any innocent motive in creating the video," the district court stated it had "reasonably conclude[d] that [Mr. Piper] created the video so that it would be disclosed, viewed and construed as a threat to cooperators." *Id.* at 137-38 n.1.[4]

Having found these facts, the court denied Mr. Piper's motion, reasoning:

---

[4] Mr. Piper disputes this conclusion in this appeal.

> [T]he Court has considered the scope of defendant's conduct in connection with the instant offenses and the significant danger to the community by defendant's participation in the distribution of some 45 kilograms of cocaine. After balancing the above factors and considering the post-sentencing discovery of defendant's rap video, the Court finds that a sentence of 135 months in prison (the original sentence and near the middle of the amended guideline range of 121 to 151 months) is sufficient but not greater than necessary to meet the sentencing factors set forth in Section 3553(a).

*Id.* at 137-38.

## II. **DISCUSSION**

Mr. Piper argues the district court (1) failed to address the policy arguments in his motion, (2) exceeded its § 3582(c)(2) authority when it considered newly alleged presentencing conduct not addressed at the original sentencing, (3) made fact findings regarding the video without holding a hearing, and (4) erroneously concluded Mr. Piper intended the video to be viewed by and construed as a threat to the cooperating witnesses.

### A. *Standards of Review*

"We review for an abuse of discretion a district court's decision to deny a reduction of sentence under 18 U.S.C. § 3582(c)(2)." *United States v. Osborn*, 679 F.3d 1193, 1195 (10th Cir. 2012). "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013). "The scope of a district court's authority in a sentencing modification proceeding under 18 U.S.C. § 3582(c)(2) is a question of law that we review de novo." *United States v. Lucero*, 713 F.3d 1024, 1026 (10th Cir. 2013) (brackets and citations omitted).

We review arguments not raised in district court for plain error. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1257 (10th Cir. 2014). Under the plain error standard, Mr. Piper must demonstrate: (1) an error, (2) that is plain, meaning clear or obvious under current law, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1258.

B. ***Legal Background***

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting § 3582(b)). Under § 3582(c)(2), an exception exists "'in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)' and made retroactive pursuant to § 994(u)." *Id.* at 824 (quoting § 3582(c)(2)). These ameliorative amendments to the Guidelines do not create a right to a sentence reduction. *United States v. Osborn*, 679 F.3d 1193, 1196 (10th Cir. 2012). Rather, even if a defendant is eligible, such "a reduction is not mandatory but is instead committed to the sound discretion of the trial court." *United States v. Telman*, 28 F.3d 94, 96 (10th Cir. 1994).

Section 3582(c)(2) authorizes a district court to reduce an otherwise final sentence under a Guidelines amendment if the reduction is consistent with U.S.S.G. § 1B1.10, the Sentencing Commission's relevant policy statement, and after considering the factors in 18 U.S.C. § 3553(a). *Dillon*, 560 U.S. at 821; 18 U.S.C. § 3582(c)(2) (stating that the district court may reduce the term of imprisonment "after considering the factors set forth

in section 3553(a) to the extent that they are applicable, if it finds that . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission").

Thus, when the § 3582(c)(2) exception applies, courts follow "a two-step approach." *Dillon*, 560 U.S. at 827. At step one, a court "follow[s] the Commission's instructions in [U.S.S.G.] § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id*. At step two, a court "consider[s] any applicable § 3553(a) factors and determine[s] whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.*

The § 3553(a) factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (a)(2)(C). The court may also "'consider' the defendant's post-sentencing conduct." *Osborn*, 679 F.3d at 1196 (quoting U.S.S.G. § 1B1.10 cmt. n.1(B)(iii)).

The two-step process under § 3582(c)(2) "authorize[s] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 826; *see also United States v. Verdin-Garcia*, 824 F.3d 1218, 1221 (10th Cir. 2016) ("Section 3582(c)(2) invites a motion for a sentencing modification, not a new sentencing proceeding.").

## C.  *Analysis*

We affirm the denial of Mr. Piper's motion for a reduced sentence.  Each of his arguments lacks merit.  The district court did not abuse its discretion or commit plain error.

### 1.  **Failure to Address Mr. Piper's Policy Arguments**

Mr. Piper argues the district court abused its discretion by failing to address his policy arguments.  He contends the court must address all of a defendant's material, non-frivolous arguments.

Section 3582(c)(2) "requires the court to *consider* the factors in 18 U.S.C. § 3553(a)."  *Verdin-Garcia*, 824 F.3d at 1221; *see* § 3582(c)(1)(A) (allowing a court to reduce the term of imprisonment "after *considering* the factors set forth in section 3553(a)" (emphasis added)).  Notably, § 3582(c)(2) does not incorporate § 3553(c), which provides that a "court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence."  18 U.S.C. § 3553(c).  "This omission is significant because we have previously interpreted the meaning of both subsections, holding that § 3553(a) requires *consideration* [of its factors], while § 3553(c) requires an *explanation* of the sentence."  *Verdin-Garcia*, 824 F.3d at 1221 (emphasis added).  Consistent with § 3582(c)(2)'s reference to § 3553(a) but not § 3553(c), the comments to the applicable policy statement—§ 1B1.10—instruct that "the court shall *consider* § 3553(a) factors and shall *consider* the nature and seriousness of the danger to the community."  *Id.* (quoting U.S.S.G. § 1B1.10 cmt. n.1(B)(i)-(ii) (2014)) (emphasis altered).  We have therefore found "no basis to impose upon the district court a

requirement to address every nonfrivolous, material argument raised by the defendant" in a § 3582(c)(2) proceeding. *Id.* at 1222.

The district court denied Mr. Piper's motion based on "the scope of defendant's conduct in connection with the [underlying] offenses," "the significant danger to the community by defendant's participation in" that offense, and his "rap video." ROA, Vol. I at 137. The court considered the § 3553(a) factors, which is all that was required. It had no further duty to "address[] every nonfrivolous, material argument raised by a defendant." *Verdin-Garcia*, 824 F.3d at 1222. The court therefore acted within its discretion in declining to address Mr. Piper's policy arguments.

## 2. **Consideration of Presentencing Conduct**

Mr. Piper argues for the first time on appeal that the district court exceeded its § 3582(c)(2) authority when it considered newly alleged presentencing conduct that was not considered during the original sentencing proceedings—that is, Mr. Piper's creation of the video. Because Mr. Piper failed to raise this argument in district court, we review it for plain error. *See* Fed. R. Crim. P. 52 ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

On appeal, Mr. Piper argues § 1B1.10 prohibits consideration of newly alleged presentencing conduct that was not considered at the original sentencing because the court must "determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). Section 1B1.10 further instructs that, "[i]n making such determination, the court shall substitute only the amendments . . .

- 10 -

for the corresponding guideline provisions that were applied when the defendant was sentenced *and shall leave all other guideline application decisions unaffected*." *Id.* (emphasis added).

Mr. Piper also points to language in § 1B1.10(a)(3) stating that, "[c]onsistent with subsection (b), proceedings under 18 U.S.C. 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant." Aplt. Br. at 13. He argues this language "requires the court to place the defendant in the posture he was at his original sentencing, with the only difference being the substituted guideline" and that a court must therefore disregard new allegations of presentencing conduct. *Id.* at 14. He further asserts that, consistent with § 1B1.10, we have held "if the district court is to make any new findings with respect to presentence conduct during a modification proceeding, those findings must be based on and consistent with facts that were adopted at the original sentencing." *Id.* at 14-15. He relies on *United States v. Battle*, 706 F.3d 1313 (10th Cir. 2013).

Mr. Piper's arguments fail under plain error review. Any error the district court may have made in considering newly alleged presentencing conduct was not clear and therefore fails the second requirement of the plain error standard.

Under plain error review, "[a]n error is clear when it is contrary to well-settled law." *United States v. Smith*, 815 F.3d 671, 675 (10th Cir. 2016). To conclude a proposition of law is well-settled, "we normally require precedent directly [o]n point from the Supreme Court or our circuit or a consensus in the other circuits." *Id.* "The absence of such precedent will not, however, prevent the conclusion an error is plain

- 11 -

when statutory language"—or in this case, the Guideline language—"is clear and obvious." *United States v. Powell*, 767 F.3d 1026, 1035 (10th Cir. 2014).

Any error was not clear or obvious under current law. Nothing in *Battle* nor any other case law we have found clearly required the district court to disregard newly alleged presentencing conduct. In *Battle*, at the original sentencing, the court had held the defendant responsible for "at least 1.5 kilograms" of the cocaine at issue. *Battle*, 706 F.3d at 1314. Later, during the § 3582(c)(2) sentence reduction proceedings, the court concluded the defendant was responsible for 3.4 kilograms based on findings and evidence adopted at the original sentencing, and it calculated his amended guideline range accordingly. *Id.*

Despite the defendant's argument that the court was bound to a finding of exactly 1.5 kilograms in the § 3582(c)(2) proceeding, we held that "a district court *may* look to its previous findings . . . to make supplemental calculations of drug quantity at resentencing if such calculations are necessary to 'determine the amended guideline range that would have been applicable' in light of a retroactive Guideline amendment." 706 F.3d at 1319 (emphasis added) (quoting U.S.S.G. § 1B1.10(b)(1)). The cases cited by *Battle* clarify only that "district courts in § 3582(c)(2) proceedings cannot make findings inconsistent with that of the original sentencing court." *Id.* (citing *United States v. Woods*, 581 F.3d 531, 538-39 (7th Cir. 2009)).

Contrary to Mr. Piper's argument, *Battle* did not say that a district court must disregard new allegations of presentencing conduct.[5] *Battle* did not specifically address that question. Moreover, the court's findings about the video at issue here comport with *Battle*: they are not and cannot be inconsistent with the findings from the original sentencing proceedings because the video's existence and its contents were not even known at the time of Mr. Piper's original sentencing

Without precedent directly on point, we may still find well-settled law if the Guideline language is itself "clear and obvious." *Powell*, 767 F.3d at 1035. But nothing in § 1B1.10 requires a court to disregard new allegations of presentencing conduct. Indeed, § 1B1.10 arguably allows the court to consider conduct that occurred before sentencing: the court "*may* consider post-sentencing conduct of the defendant that occurred after imposition of the term of imprisonment," and the court "*shall* consider the factors set forth in 18 U.S.C. 3553(a)." U.S.S.G. § 1B1.10 cmt. n.1(B)(i), (iii) (2014) (emphasis added). Because § 3553(a) includes consideration of presentencing conduct, including the "nature and circumstances of the [underlying] offense and the history and

---

[5] "[B]ecause it is unnecessary to the resolution of this appeal, we need not decide whether the district court is permitted to engage in new fact-finding in determining the amended guideline range in a § 3582(c)(2) proceeding." *Battle*, 706 F.3d at 1319. *See also United States v. Vann*, 593 F. App'x 782, 786 (10th Cir. Nov. 25, 2014) (unpublished) (summarizing *Battle* and stating "[w]e declined to decide whether the district court could engage in new fact-finding in determining the amended guideline range in a § 3582(c)(2) proceeding" (quotations omitted)). The unpublished cases cited in this opinion are included for their persuasive value. *See* Fed. R. App. P. 32.1, 10th Cir. R. 32.1.

characteristics of the defendant," Mr. Piper's argument that the court may consider only post-sentencing conduct is inconsistent with § 1B1.10.[6]

Additionally, § 1B1.10's requirement that a court substitute the amended guideline and "leave all other guideline application decisions unaffected" at step one of the *Dillon* analysis does not indicate the court must disregard newly alleged presentencing conduct at step two when the court considers the § 3553(a) factors. Similarly, § 1B1.10's statement that a § 3582(c)(2) proceeding "do[es] not constitute a full resentencing of the defendant" does not speak to whether a district court must disregard new allegations of presentencing conduct.[7]

Because nothing in the case law or in § 1B1.10 clearly requires a district court to disregard new allegations of presentencing conduct, Mr. Piper fails to demonstrate that the district court committed plain error.

3. **Failure to Hold a Hearing**

Mr. Piper argues the district court erred in finding he created the video "so that it would be disclosed, viewed and construed as a threat to cooperators" without first

---

[6] *See also United States v. Meridyth*, 573 F. App'x 791, 794 (10th Cir. Aug. 11, 2014) (unpublished) (referencing defendant's extensive pre-incarceration, presentencing criminal history throughout his adult life as well as his characteristics and behavior during incarceration to determine that a full sentence reduction would be inappropriate).

[7] Furthermore, although application note 1(B)(iii) of § 1B1.10 states that a court "may consider *post-sentencing* conduct . . . in determining: (I) Whether a reduction in the defendant's term of imprisonment is warranted; and (II) the extent of such reduction" (emphasis added), nothing in § 1B1.10 or its application notes clearly addresses whether a court must disregard new allegations of *presentencing* conduct. Thus, Mr. Piper has failed to demonstrate plain error from the text of § 1B1.10.

holding a hearing. ROA, Vol. I at 137 n.1. Mr. Piper did not request a hearing in district court. We therefore review for plain error. *See* Fed. R. Crim. P. 52; *Rosales-Miranda*, 755 F.3d at 1257.[8]

Mr. Piper argues the failure to hold a hearing was plain error based on § 3582(c)(2)—which directs courts to make reduction decisions "consistent with applicable policy statements issued by the Sentencing Commission"—and U.S.S.G. § 6A1.3(a), a policy statement providing that, "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." Aplt. Reply Br. at 6-7.

Mr. Piper's argument fails. In imposing an original sentence, a district court need not hold a § 6A1.3(a) hearing when a defendant disputes facts but fails to request a

---

[8] Mr. Piper argues we should not review for plain error because he disputed the Government's facts in district court. In short, he argues that raising a fact dispute is tantamount to requesting a hearing. As we made clear in *United States v. Fortenbury*, 917 F.2d 477 (10th Cir. 1990), it is not. 917 F.2d at 480 (rejecting a defendant's complaint "that he was denied an evidentiary hearing" at his initial sentencing where he "disputed matters in the presentencing report" but "never requested an evidentiary hearing").

Mr. Piper also argues the "district court's reliance on its finding that Mr. Piper intentionally threatened the cooperators, rather than on the government's argument that Mr. Piper violated his conditions of pretrial release, excuses Mr. Piper from not predicting that he needed to request a hearing, and saves him from plain error review." Aplt. Br. at 19 n.3. We disagree. In its response brief in district court, the Government put Mr. Piper's creation of the video at issue by arguing it rendered a reduced sentence unwarranted. The brief specifically asserted that Mr. Piper's involvement in the creation of the rap video was "designed to intimidate witnesses." ROA, Vol. I at 111. With this knowledge, Mr. Piper could have requested a hearing at any point thereafter, but he did not. We therefore review for plain error.

hearing. *See United States v. Fortenbury*, 917 F.2d 477, 480 (10th Cir. 1990) (rejecting a defendant's complaint "that he was denied an evidentiary hearing on disputed matters . . . . [because he] never requested an evidentiary hearing"). The requirements "imposed on the court at [§ 3582(c)(2)] proceedings cannot be greater than those imposed at an original sentencing." *Verdin-Garcia*, 824 F.3d at 1221. Thus, when a defendant disputes facts but fails to request a hearing in a § 3582(c)(2) proceeding, a district court need not hold a hearing. We accordingly find no error.

4. **Fact Finding of Intent**

We review factual findings made by sentencing courts for clear error, including findings made in response to § 3582(c)(2) motions.[9] Mr. Piper argues the district court's finding that he "created the video so that it would be disclosed, viewed and construed as a threat to cooperators" was clearly erroneous. ROA, Vol. I at 137 n.1. We disagree.

"A factual finding is clearly erroneous only if it is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *United States v. Craig*, 808 F.3d 1249, 1255 (10th Cir. 2015) (brackets and quotations omitted).

The district court did not commit clear error. It is undisputed that:

---

[9] This is consistent with circuits that have reviewed cases decided under § 3582(c)(2). *See, e.g.*, *United States v. Zayas-Ortiz*, 808 F.3d 520, 523 (1st Cir. 2015); *United States v. Mann*, 709 F.3d 301, 304 (4th Cir. 2013); *United States v. Valentine*, 694 F.3d 665, 669-70 (6th Cir. 2012); *United States v. Cooley*, 590 F.3d 293, 295 (5th Cir. 2009).

- 16 -

- The video shows Mr. Piper and another individual extend their hands toward the camera and make a trigger-pulling motion with their index fingers, while the lyrics "try to tell on me" play.

- The video shows a hostage figure who is initially "bound and gagged in a dark room" and whose head ultimately hangs forward, motionless.

- After creating and performing in the video, Mr. Piper allowed someone to preserve a copy of it.

ROA, Vol. I at 115, 136.

Based on the foregoing content and Mr. Piper's decisions to (1) perform in a video suggesting a violent threat and (2) leave the video with a third party, we lack a "definite and firm conviction" that the district court erred in finding Mr. Piper intended the video to be viewed by and construed as a threat to the cooperating witnesses. *Craig*, 808 F.3d at 1255 (quotations omitted).

The possibility of an innocent explanation for the video does not transform the district court's finding into clear error. If the "court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse it even if we might have weighed the evidence differently. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Put simply, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* Because the district court's interpretation of the video is plausible, another potential interpretation does not make the court's finding about Mr. Piper's intent clearly erroneous.

## III.  **CONCLUSION**

For the foregoing reasons, we affirm the district court's denial of Mr. Piper's motion for sentence reduction.